MARC M. SELTZER (54534)
mseltzer@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1901 Avenue of the Stars, Suite 950
Los Angeles, CA  90067-6029
Telephone:  (310) 789-3100
Facsimile:  (310) 789-3150

ARUN S. SUBRAMANIAN
(Admitted *Pro Hac Vice*)
asubramanian@susmangodfrey.com
SUSMAN GODFREY L.L.P.
654 Madison Avenue, Floor 5
New York, NY  10065
Telephone:  (212) 336-8330
Fax:  (212) 336-8340

ANAT LEVY (128040)
Alevy96@aol.com
ANAT LEVY & ASSOCIATES, P.C.
8840 Wilshire Blvd., Third Floor
Beverly Hills CA  90211
Telephone:  (310) 358-3138
Facsimile:  (310) 358-3104

Attorneys for Plaintiffs
(See Signature Page for Name and Address
of Additional Counsel for Plaintiffs)

FILED
CLERK, U.S. DISTRICT COURT

JUL - 6 2009

CENTRAL DISTRICT OF CALIFORNIA
BY                    DEPUTY

LODGED
CLERK, U.S. DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

COPY

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| RICHARD B. CLARK, f/d/b/a AUSTIN'S BARBEQUE & TAVERN; JJ MANAGEMENT CO., INC., and MICHAEL RABINOWITZ, d/b/a GOODFELLOW AUTOMOTIVE, Individually and On Behalf of All Others Similarly Situated,<br><br>     Plaintiffs,<br><br>  vs.<br><br>ADVANCEME, INC., d/b/a SUPPLY SERVICES,<br><br>     Defendant. | Case No. CV 08-3540 VBF (FFMx)<br><br>CLASS ACTION<br><br>**SECOND AMENDED COMPLAINT FOR VIOLATION OF THE CALIFORNIA USURY LAWS (Cal. Const., Art. XV, §1), AND THE CALIFORNIA UNFAIR COMPETITION LAW (Bus. & Prof. Code § 17200, *et seq.*)**<br><br>**JURY TRIAL DEMANDED** |

956009v1/010557

Plaintiffs Richard B. Clark, f/d/b/a Austin's Barbeque & Tavern, JJ Management Co., Inc., and Michael Rabinowitz, d/b/a Goodfellow Automotive, by their undersigned attorneys, make the following allegations against defendant AdvanceMe, Inc. ("AdvanceMe") upon information and belief based upon an investigation conducted by and under the supervision of counsel for plaintiffs. Allegations as to plaintiffs' own acts are based upon plaintiffs' personal knowledge.

## I.    NATURE OF THE ACTION

1.    Plaintiffs bring this action pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of themselves and all other similarly situated persons and entities, as defined in Paragraph 14 below (the "Class"). Plaintiffs and other members of the Class entered into contracts with AdvanceMe for "cash advances" purportedly to be repaid out of the proceeds of future credit card "receivables." Under the contracts in question, known as "Merchant Agreements," AdvanceMe advanced cash to merchants in exchange for a large amount of merchants' credit card receivables, automatically extracted by AdvanceMe from customer payments on a monthly basis. The receivables paid to AdvanceMe were far in excess of the cash advanced to plaintiffs and other Class members (*e.g.*, a cash advance of $20,000 required payment to AdvanceMe of $30,000 in receivables), and AdvanceMe advanced only as much cash as it could recoup in a short period of time, usually less than one year.

2.    The excess amount of receivables paid to AdvanceMe over the amount of the cash advanced was, in reality, interest on an amount loaned to merchants by AdvanceMe, and because of the short period in which AdvanceMe would be repaid, the effective annual rates of interest charged to plaintiffs and other Class members were exorbitant—often far in excess of 100%. The obligations of plaintiffs and other Class members to AdvanceMe were, moreover, collateralized

2

by security interests in their current and after-acquired personal property, and they were required to personally guarantee those payment obligations.

3.    These oppressive arrangements are in fact disguised loans, violating California's laws prohibiting usury.  Furthermore, AdvanceMe, although it is a lender that has operated in the State of California for over a decade, has never secured or even applied for a license or other approval required to conduct its lending business in California.  For this reason, and because AdvanceMe flouted the restrictions applicable to lenders operating in this State, AdvanceMe has violated— and continues to violate—California's Finance Lenders Law.

4.    In making usurious loans, and violating California's finance lending laws, AdvanceMe has committed illegal, unfair and fraudulent business acts and practices within the meaning of California's Unfair Competition Law.

5.    By this action, plaintiffs seek damages, restitution and other legal and equitable remedies for themselves and the members of the Class.

## II.    JURISDICTION AND VENUE

6.    This action arises under California's usury laws, Cal. Const. Art. XV, §1, and Cal. Civ. Code § 1916 *et seq.*, the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*, and the California Finance Lenders Law, Cal. Fin. Code § 22000 *et seq.*

7.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d).  Plaintiffs are citizens of the State of California, while AdvanceMe is a citizen of the States of Delaware and Georgia.  The matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs.

8.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(a).  One of the named plaintiffs and other members of the Class reside in and do business in

3

this district. A substantial part of the events giving rise to the claims alleged herein occurred in this district.

### III.   PARTIES

#### Plaintiffs

9.    Plaintiff Richard B. Clark ("Clark") is a citizen and resident of the State of California. At all times relevant hereto, Clark did business as Austin's Barbeque & Tavern, and operated a restaurant doing business under this name in Mountain View, California.

10.    Plaintiff JJ Management Co., Inc. ("JJ Management") is a corporation organized under the laws of the State of California with its principal place of business in Orange County, California. At all times relevant hereto, JJ Management operated a restaurant known as JoJo's Pizza Kitchen located in Mission Viejo, California.

11.    Plaintiff Michael Rabinowitz ("Rabinowitz") is a citizen and resident of the State of California. At all times relevant hereto, Rabinowitz did business as Goodfellow Automotive, and operated an auto repair shop doing business under this name in Canoga Park, California.

#### AdvanceMe

12.    Defendant AdvanceMe is a corporation organized under the laws of the State of Delaware with its principal place of business in Kennesaw, Georgia. At all times relevant hereto, AdvanceMe did and continues to do business in California and in this district. AdvanceMe sometimes does business under different names, including "Supply Services" and "Songbird."

13.    Until July 2007, AdvanceMe was unauthorized to conduct business in California, notwithstanding that it had been doing so, maintaining offices in California for nearly a decade, directly or through its representatives, and had filed

4

1    numerous lawsuits against California merchants to enforce the terms of its cash
2    advance arrangements.

3        14.    AdvanceMe has never sought or been granted approval to conduct
4    business as a lender in California, nor does it conduct itself in accordance with the
5    California's laws and regulations pertaining to lenders.

6

7            **IV.    CLASS ACTION ALLEGATIONS**

8        15.    Plaintiffs bring this class action pursuant to Rules 23(a) and 23(b)(3)
9    of the Federal Rules of Civil Procedure on behalf of all persons and entities owning
10   or operating retail establishments in California who either paid, or agreed to pay,
11   AdvanceMe pursuant to AdvanceMe's Merchant Agreements or who provided
12   personal guarantees to AdvanceMe to secure the making of such payments to
13   AdvanceMe. Excluded from the Class are AdvanceMe, the officers, directors or
14   employees of AdvanceMe, any entity in which AdvanceMe has a controlling
15   interest, and the affiliates, legal representatives, attorneys, heirs, successors-in-
16   interest or assigns of any excluded person or entity.

17       16.    The members of the Class are so numerous that joinder of all
18   members is impracticable. While the exact number of Class members is unknown
19   to plaintiffs at this time, and can only be ascertained through appropriate discovery,
20   plaintiffs believe that there are hundreds, if not thousands, of geographically
21   dispersed Class members. Class members can be identified and notified of the
22   pendency of this action using forms of notice similar to those customarily used in
23   similar class actions.

24       17.    Plaintiffs' claims are typical of the claims of the members of the
25   Class. Plaintiffs and all members of the Class sustained injuries and damages
26   arising out of AdvanceMe's wrongful common course of conduct complained of
27   herein. The injuries and damages of each member of the Class were caused directly

28

5

956009v1/010557

by AdvanceMe's wrongful common course of conduct in violation of law as alleged herein.

18.     Plaintiffs will fairly and adequately represent and protect the interests of the Class, and plaintiffs have no interests which are antagonistic to or in conflict with the interests of the Class members that they seek to protect.  Plaintiffs have retained competent counsel experienced in the prosecution of class actions and other complex litigation.

19.     The questions of law and fact common to the Class predominate over the questions that may affect individual Class members, including the following:

(a)     Whether AdvanceMe's cash advance contracts are in fact disguised loan transactions;

(b)     Whether such loan transactions violate California's usury laws;

(c)     Whether, by engaging in the cash advance business, AdvanceMe is violating California laws that require it to be qualified and licensed to conduct its lending business in this State;

(d)     Whether, by engaging in the cash advance business, AdvanceMe has engaged, and is engaging, in unlawful, unfair or fraudulent business acts or practices, in violation of the UCL;

(e)     The nature and extent of injuries sustained by plaintiffs and members of the Class and the proper measure of damages applicable thereto;

(f)     The amount of revenues and profits obtained by AdvanceMe attributable to its unlawful acts; and

(g)     The equitable relief which plaintiffs and the Class are entitled to obtain.

6

956009v1/010557

20.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all Class members is impracticable. Furthermore, as the damages suffered by individual members of the Class may be relatively small, the expense and burden of individual litigation make it impossible for the members of the Class to individually seek redress for the wrongs done to them. There will be no difficulty in the management of this action as a class action.

21.    The prosecution of this action as a class action will reduce the possibility of repetitious litigation and will provide redress for claims too small to support the expense of individual, complex litigation. Absent a class action, Class members will continue to suffer losses, AdvanceMe's violations of law will be allowed to proceed without remedy, and AdvanceMe will continue to reap millions of dollars received as a result of its wrongdoing. A class action therefore provides a fair and efficient method for adjudicating this controversy.

22.    The prosecution of separate claims by individual Class members would create the risk of inconsistent or varying adjudications with respect to hundreds of individual Class members, which would, as a practical matter, dispose of the interests of the Class members not parties to those separate actions or would substantially impair or impede their ability to protect their interests and enforce their rights.

## V.    ADVANCEME'S WRONGFUL COURSE OF CONDUCT

23.    Defendant AdvanceMe has devised and executed a plan and a scheme pursuant to which it preys on restaurants and other retail establishments that have difficulty obtaining financing from banks and other traditional financial institutions.

24.    In exchange for a cash advance from AdvanceMe, the merchant agrees (pursuant to a standard-form, nonnegotiable written contract known as a

7

"Merchant Agreement") to repay AdvanceMe the full amount of the advance (principal), plus an additional sum (in reality, interest on the amount advanced), typically calculated by AdvanceMe to be paid in full within four to twelve months. This promise to pay AdvanceMe is unconditionally guaranteed by the merchant's owner, and is collateralized by a security interest in all of the merchant's current and after-acquired tangible and intangible personal property, and in many instances the personal property of the merchant's owner.

25.    AdvanceMe is repaid through the equivalent of a credit card processing "lock box." Until recently, AdvanceMe required merchants to contract with AdvanceMe's credit card processor to receive a pre-stated percentage (usually 16%-35%) of the total amount of each of the merchant's credit card transactions. Such contracts are now made with the merchant's own credit card processor. AdvanceMe continues to debit the merchant's bank account in this manner until the full amount of the advance and interest are repaid.

26.    The effective annual interest rates on these cash advance transactions are exorbitant, well exceeding the legal limit for unlicensed lenders, and often more than 100% due to exceedingly short time in which AdvanceMe designs its loans to be repaid. In terms of dollar amount, the interest received on its loans often exceeds more than fifty percent of the principal amount.

27.    AdvanceMe claims that it is not subject to California's usury and lending laws because it is not making loans to merchants, but is instead "factoring" the merchant's future credit card receivables. Notwithstanding AdvanceMe's mischaracterization of the transactions, the following factors, among others, establish that these cash advance arrangements are, in fact, loans:

(a)    AdvanceMe requires that the merchant undergo a pre-qualification creditworthiness background examination. AdvanceMe reviews the dollar volume of the merchant's credit card transactions in the preceding months to

8

determine how much it will advance and what the merchant will be required to pay out of its credit card transactions in order to be paid the full amount within four to twelve months of the cash advance. Therefore, notwithstanding that the AdvanceMe standard-form Merchant Agreement does not have an express repayment date, AdvanceMe takes steps to virtually guarantee that the full amount owed will be paid within a short timeframe, usually within one year.

(b)    The merchant is also required to submit a credit application and AdvanceMe conducts a thorough credit check on the merchant and its owner, including obtaining banking information, Fair Isaac Corporation ("FICO") credit scores and credit references. In entering into these cash advance arrangements with the merchant, AdvanceMe looks to the creditworthiness of the merchant and its owner to assure payment, rather than that of any third-party customer or debtor who may owe a receivable to the merchant.

(c)    AdvanceMe's form written Merchant Agreement provides that AdvanceMe will take a fixed percentage (17% or more) of each credit or debit card transaction entered into by the merchant and its customer until the full amount due for the cash advance is paid. Thus, the total amount due as interest is readily determinable from the face of the contract at the time the contract is entered into.

(d)    AdvanceMe's standard form Merchant Agreement includes an unconditional personal guarantee by the merchant's owner to repay the full amount of the advance and interest. The guarantee is contractually triggered in a broad range of circumstances, calculated to ensure that the guarantor can be sued in the event the merchant defaults on its payments to AdvanceMe.

(e)    AdvanceMe obtains a security interest in the merchant's present and after-acquired tangible and intangible personal property, including, but not limited to, all of the merchant's equipment, machinery, furniture, inventory,

9

intellectual property, and receivables. In many instances, AdvanceMe obtains a security interest in the personal property of the merchant's owner as well.

(f)    Pursuant to the Merchant Agreement, AdvanceMe is entitled to and files a UCC-1 Financing Statement with the California Secretary of State to perfect its security interest in, and place a lien on, all of the tangible and intangible current and after-acquired personal property owned by the merchant, and in many cases, its owner/guarantor.

(g)    AdvanceMe will sue the merchant or its guarantor or owner, or both, for payment and foreclosure on the security given to secure the payment of the amounts due to AdvanceMe in the event the full amount due is not repaid, and has indeed instituted dozens, if not hundreds, of debt collection actions against California merchants and their owners in California (despite being unauthorized to conduct business in California).

(h)    AdvanceMe has, in prior judicial and administrative proceedings, characterized its cash advance transactions as loans.

28.    In an effort to evade California's usury, lending, and unfair competition laws, AdvanceMe has included in its standard-form Merchant Agreements unfair waivers of rights by merchants and guarantors, including, at various times, in contravention of fundamental policies of the law of California, class action waivers and choice-of-law provisions that seek to immunize AdvanceMe from liability for usury and lending law violations, and jury trial waivers that inure solely to AdvanceMe's benefit.

29.    The agreements at issue in this case are contracts of adhesion. AdvanceMe, which drafted the contracts, exercised unequal bargaining power over the plaintiffs and other Class members.

30.    The class action waivers, jury trial waivers, choice-of-forum provisions, and choice-of-law provisions are unfair, unconscionable, and otherwise

10

unenforceable.  These provisions are oppressive and unreasonably seek to favor AdvanceMe, facilitate AdvanceMe's violations of the laws of California, and violate California's fundamental public policy.  They are for these reasons unenforceable.

## VI.   ADVANCEME'S TRANSACTIONS WITH THE PLAINTIFFS

### 1. Richard Clark

31.   On or about May 4, 2004, following a "cold call" from one of AdvanceMe's sales persons, and a comprehensive credit and financial background check of Clark, Clark signed AdvanceMe's standard form written Merchant Agreement, and AdvanceMe issued to Clark a "cash advance" in the amount of $73,000.

32.   Pursuant to the terms of the written contract, Clark became indebted to AdvanceMe in the sum of $109,500, and granted to AdvanceMe a security interest in his restaurant's current and after-acquired personal property, thereby securing the full amount of the $109,500 debt.  Clark also executed a personal guarantee of the debt, which guarantee was included as part of the written contract.

33.   Pursuant to the written contract, AdvanceMe filed a UCC-1 Financing Statement with the California Secretary of State on June 2, 2004, perfecting its security interest in the restaurants' and Clark's property.

34.   AdvanceMe thereafter began electronically debiting Clark's bank account in the sum of 17% of each qualifying credit card transaction, until, within a matter of a few months, the entire $109,500 was repaid to AdvanceMe.

35.   On or about May 7, 2005, AdvanceMe loaned Clark another $73,000 under the same terms, again requiring repayment of $109,500.  AdvanceMe's UCC-1 financing statement remained in force to cover the second loan, and again, Clark was required to guarantee the loan.

11

956009v1/010557

36.    On or about July 12, 2005, Clark closed his restaurant. AdvanceMe continued to debit his bank account through December 2005, whenever he swiped a credit card for payment of certain personal catering jobs he was able to obtain from time to time to make ends meet.

37.    Rather than write off the outstanding $46,000 due on the second contract — the appropriate step if AdvanceMe was truly "factoring receivables" and thereby assuming the risk of non-payment — AdvanceMe filed suit against Clark for breach of contract seeking damages of $61,804, approximately $15,000 more than the full outstanding amount due on the loan, prejudgment interest of 10%, and possession, foreclosure, and sale of all of the restaurants' and Clark's assets.

38.    AdvanceMe voluntarily dismissed its complaint without prejudice when Clark indicated that he would file a class action counterclaim. AdvanceMe continues to contend that Clark owes the full amount allegedly due under the contract and has failed to release its UCC-1 lien on his assets.

39.    Any statutes of limitation for the claims asserted by Clark in this action were tolled from August 30, 2006 until February 13, 2007, from the date AdvanceMe filed an action (the "prior action") against Clark for breach of contract, foreclosure on property and other related claims to collect payments it claimed were owed to it under the loans at issue herein until the date the prior action was dismissed. The prior action was entitled *AdvanceMe, Inc. v. Richard Clark d/b/a Austin's Barbeque & Tavern, and Austin's Restaurant & Catering*, Case No. 1:06-CV-060372, filed in the Superior Court of the State of California for the County of Santa Clara. Although, as alleged above, AdvanceMe dismissed the prior action without prejudice, it continues to assert that Clark owes it the sums for which it sued him, and which are the subject of this action.

12

## 2. JJ Management Co., Inc.

40.    On or about July 24, 2006, following a credit and financial background check consistent with the allegations stated above, AdvanceMe issued to plaintiff JJ Management a "cash advance" in the amount of $30,000. Its owner, Joseph Bonafede, signed AdvanceMe's standard form Merchant Agreement.

41.    Pursuant to the terms of the written contract, JJ Management became indebted to AdvanceMe in the sum of $41,970, and granted to AdvanceMe a security interest in its restaurant's past and after-acquired property, thereby securing the full $41,970 debt. JJ Management's owner, Joseph Bonafede, executed the personal guarantee on the first page of the written contract.

42.    AdvanceMe thereafter began electronically debiting JJ Management's bank account in the sum of 22% of each qualifying credit card transaction, until, in less than a year, the entire $41,970 was repaid to AdvanceMe.

43.    Between 2006 and the present, Joseph Bonafede, on behalf of his companies, including JJ Management, has taken approximately $295,000 in loans from AdvanceMe. The companies have collectively repaid over $412,000, more than 70% more than the total amount borrowed from AdvanceMe.

44.    On or about June 7, 2007, AdvanceMe made a second loan to JJ Management under the same terms, but this time for $34,000 and requiring repayment of $47,566. Again, Bonafede was required to and did personally guarantee the loan. As of May 2008, JJ Management repaid AdvanceMe approximately $30,000 due on the loan.

## 3. Michael Rabinowitz

45.    On or about August 8, 2007, following a "cold call" from one of AdvanceMe's third party representatives, and a comprehensive credit and financial background check of Rabinowitz by AdvanceMe, Rabinowitz signed AdvanceMe's

13

standard form written Merchant Agreement, pursuant to which AdvanceMe issued to Rabinowitz a "cash advance" in the amount of $10,000.

46.    Pursuant to the terms of the Merchant Agreement, Rabinowitz became indebted to AdvanceMe in the sum of $13,999 ("Specified Amount"), and granted to AdvanceMe a security interest in his personal property, thereby securing the full amount of the $13,999 debt. Rabinowitz also executed a personal guarantee of the debt, which guarantee was included as part of the Merchant Agreement.

47.    Pursuant to the Merchant Agreement, AdvanceMe filed a UCC-1 Financing Statement with the California Secretary of State perfecting its security interest in Rabinowitz's property.

48.    AdvanceMe thereafter began electronically debiting Rabinowitz's bank account in the sum of 22% of each qualifying credit card transaction, pursuant to which Rabinowitz made approximately $4,000 in repayments to AdvanceMe on the debt.

49.    AdvanceMe's credit card processor — First American Payment Systems ("FAPS") — which AdvanceMe had required Rabinowitz to use as part of the terms of the Merchant Agreement, ultimately suspended service to Rabinowitz because his shop had not had a credit card transaction within a few weeks due to a downturn in business.

50.    Because Rabinowitz was prohibited from switching credit-card processors due to the terms of AdvanceMe's form Merchant Agreement, Rabinowitz was unable to accept further credit card transactions from his customers.

51.    Accordingly, the last payment made by Rabinowitz on the contract was in the late summer or fall of 2008, when FAPS turned off his ability to accept credit card payments.

52.    On or about April 14, 2009, Goodfellow Automotive, Rabinowitz's auto repair shop, went out of business.

14

53.    Rather than write off the outstanding amounts due on Rabinowitz's contract, AdvanceMe demanded that Rabinowitz repay the full amount owing on the Merchant Agreement, and ultimately filed a collection action on April 16, 2009 against Rabinowitz seeking damages of $9,131.57 on the Merchant Agreement, plus 10% interest from October 10, 2008.  Among the contract breaches alleged by AdvanceMe was that Rabinowitz had "failed and refused to pay [AdvanceMe] the balance of the Specified Amount due under the Merchant Agreement."

54.    AdvanceMe expressly denominated its lawsuit against Rabinowitz as a "Rule 3.740 collections" case.  California Rules of Court, Rule 3.740, defines "collections case" as "an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney fees, arising from a transaction in which property, services, or money was acquired *on credit*." (Emphasis added.)

55.    AdvanceMe's collection case is entitled *AdvanceMe, Inc. v. Michael Rabinowitz ind. and dba Goodfellow Automotive*, Case No. 09E04448, and is currently pending in the Superior Court of the State of California for the County of Los Angeles.

56.    Any statute of limitation for the claims asserted by Rabinowitz in this action is tolled from April 16, 2009, the date AdvanceMe filed its collection action against Rabinowitz on account of the loan at issue herein, until the date the case is dismissed.

### **FIRST CLAIM FOR RELIEF**
#### **(For Violation of California's Usury Laws)**

57.    Plaintiffs reallege and incorporate herein by reference paragraphs 1 through 43 above as though fully set forth herein.

15

58.    AdvanceMe has devised and engaged in a scheme pursuant to which it solicits and issues usurious loans to persons or entities owning or operating restaurants in California under their merchant cash advance business. AdvanceMe has disguised and masked the true nature of such transactions by mischaracterizing them as "purchases" of credit card receivables in an attempt to evade California's usury laws.

59.    Each of the merchant Class members has taken a usurious loan from AdvanceMe and each of the merchant owner Class members has executed a personal guarantee guarantying the full amount of the debt allegedly owed to AdvanceMe.

60.    Notwithstanding the misrepresentations made by AdvanceMe, the cash advance transactions are, in reality, loans.

61.    AdvanceMe is not a lender exempt from the prohibitions of usury laws in California, nor are the transactions that are the subject of this action exempt under California's usury laws.

62.    The interest charged by AdvanceMe in connection with these loan transactions is in excess of the statutory maximum rates of interest permitted in California for these transactions, and plaintiffs' and Class members' obligation to repay such interest is, in fact and in practice, unconditional.

63.    AdvanceMe willfully intended to enter into each of the above-described usurious transactions with plaintiffs and the members of the Class.

64.    The parties to the cash advance arrangements intended and considered the transactions to be loans.

65.    As a direct and proximate result of the foregoing, plaintiffs and the members of the Class have been damaged in an amount to be proven at trial.

66.    Plaintiffs seek and are entitled to damages in the amount of interest paid during the two years immediately prior to the filing of this action and for a

16

956009v1/010557

judgment canceling all allegedly future payment obligations that will become due for the remainder of the term of the contracts.

67.    In addition, plaintiffs and the members of the Class are entitled to damages equal to three times the interest paid by plaintiffs and the members of the Class in the twelve months preceding the filing of this action, and continuing to the time of judgment herein.

68.    AdvanceMe intended to injure plaintiffs and the members of the Class by its willful acts and AdvanceMe's conduct was oppressive, fraudulent and malicious, entitling plaintiffs and the members of the Class to an award of punitive damages.

69.    Further, plaintiffs seek and are entitled to an order of restitution from AdvanceMe to plaintiffs and all Class members of all monies AdvanceMe wrongfully obtained, as well as an order enjoining AdvanceMe's wrongful acts and practices, including, but not limited to, an order requiring AdvanceMe to give notice to the Class of the true nature of the transactions, and to disgorge their ill-gotten gains, as well as such other relief that the Court deems just and proper.

## SECOND CLAIM FOR RELIEF

### (For Violation of California Business and Professions Code § 17200, *et seq.*)

70.    Plaintiffs reallege and incorporate herein by reference paragraphs 1 through 56 as though fully set forth herein.

71.    Commencing on a date currently unknown to plaintiffs, AdvanceMe committed, and continues to commit and engage in, unlawful, unfair or fraudulent business acts or practices within the meaning of the UCL in operating and implementing their cash advance business.

17

956009v1/010557

72.     AdvanceMe's unlawful practices include, but are not limited to:

(a)     Violation of California's usury laws under Section 1 of Article XV of the California Constitution, for charging interest on money loans that exceeds California's legal interest limits.

(b)     Violation of state and federal banking laws for engaging in a "commercial banking business" as defined in Section 105.2 of the California Financial Code by issuing non-exempt loans to restaurants and other merchants in California without being authorized to do so by the California Department of Financial Institutions or any other state or federal agency.

73.     AdvanceMe's unlawful practices include, but are not limited to, requiring merchants and guarantors to execute unconscionable form contracts that:

(a)     Falsely state that the transaction is not a loan;

(b)     Require the merchant to grant AdvanceMe excessively broad security interests in all of the merchant's present and after-acquired tangible and intangible personal property;

(c)     Provide for an unfair penalty clause pursuant to which AdvanceMe can accelerate the loan or invoke the guarantor's personal guarantee for the full amount allegedly due for any breach by the merchant of the Merchant Agreement, no matter how minor, and in the case of a change in credit card processors, can immediately seek 100% of the remaining principal and interest due on the loan, and automatically debit the full amount from the merchant's bank account; and

(d)     Contain unfair and unconscionable choice-of-forum, choice-of-law, class-action waiver, and jury-trial waiver provisions.

74.     The terms described above, as well as other terms in the agreements, separately and when taken in combination, render the agreements unfair, illegal, fraudulent, and unconscionable.

18

75.    AdvanceMe has been unjustly enriched as a result of its wrongful conduct as herein alleged.

76.    AdvanceMe should be required to disgorge its ill-gotten gains and make restitution to plaintiffs and to members of the Class.

### THIRD CLAIM FOR RELIEF

**(For Violation of California Business and Professions Code**

**§ 17200, *et seq.*, based on Violations of California**

**Financial Code § 22000, *et seq.*)**

77.    Plaintiffs reallege and incorporate herein by reference paragraphs 1 through 63 as though fully set forth herein.

78.    While it has illegally operated outside the confines of California's lending laws for over a decade, AdvanceMe has in fact engaged in the business of a "finance lender," and has issued millions of dollars in illegal loans to California residents during that time.

79.    The California Finance Lenders Law is designed to protect borrowers against unfair practices such as those committed by AdvanceMe. Cal. Fin. Code. § 22000, *et seq.*

80.    By illegally operating outside the confines of that law, AdvanceMe has engaged in the following harmful and illegal acts, among others:

    (a)    Failing to obtain a license from the Commissioner of Corporations (the "Commissioner") authorizing it to conduct its lending business in the State;

    (b)    Failing to post in its places of business a license from the Commissioner;

    (c)    Failing to file with the Commissioner, and provide for public inspection, information concerning AdvanceMe's business within the State;

19

     (d)    Advertising, publishing, and broadcasting false, misleading, incomplete, and deceptive information concerning the interest rates, terms, and conditions of its loans, or permitting such information to be disseminated; and

     (e)    Failing to give adequate, clear, and full information concerning its rates of interest, charges, or costs of loans to its customers in advertisements.

81.    AdvanceMe's willful violations of the law further subject it to penalties under Cal. Fin. Code. § 22780.

82.    AdvanceMe's violations of the Finance Lenders Law constitute unlawful, unfair or fraudulent business acts or practices within the meaning of the UCL.

83.    AdvanceMe has been unjustly enriched as a result of its wrongful conduct as herein alleged. AdvanceMe should be required to disgorge its ill-gotten gains and make restitution to plaintiffs and to members of the Class.

## **PRAYER FOR RELIEF**

WHEREFORE, plaintiffs pray for judgment against AdvanceMe jointly and severally, as follows:

1.    For an order certifying that the action may be maintained as a class action;

2.    For injunctive relief to restrain AdvanceMe from continuing to engage in acts and practices in violation of California law;

3.    For an accounting and the imposition of an asset freeze and constructive trust over all interest and other monies that AdvanceMe obtained through its illegal, unfair and deceptive business acts and practices;

4.      For equitable relief in the form of an order requiring AdvanceMe to disgorge all interest and profits earned as a result of engaging in its illegal and unfair scheme as alleged above;

5.      For equitable relief in the form of an order requiring AdvanceMe to notify Class members that they have the right not to pay usurious interest and are entitled to restitution for the interest they paid to AdvanceMe pursuant to AdvanceMe's merchant cash advance business;

6.      For equitable relief in the form of an order voiding AdvanceMe's outstanding loans.

7.      For all available civil statutory penalties, including, but not limited to, treble damages for all interest paid within one year of the filing of this complaint and during the pendency of the action;

8.      For pre-and post-judgment interest at the maximum legal rate;

9.      For attorneys' fees as provided by law;

10.     For costs of suit; and

11.     For such other and further relief as this Court may deem just and proper.

Dated: July 2, 2009               MARC M. SELTZER
                                  SUSMAN GODFREY L.L.P.

                                  ARUN S. SUBRAMANIAN
                                  SUSMAN GODFREY L.L.P.

                                  DREW D. HANSEN
                                  (Admitted *Pro Hac Vice*)
                                  dhansen@susmangodfrey.com
                                  SUSMAN GODFREY L.L.P.
                                  1201 Third Avenue, Suite 3800
                                  Seattle, WA  98101
                                  Telephone: (206) 516-3880
                                  Fax:  (206) 516-3883

21

1

2     ANAT LEVY
      ANAT LEVY & ASSOCIATES, P.C.

3

4     By _Marc M. Seltzer by KAC_
          Marc M. Seltzer

5         Attorneys for Plaintiffs

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                              22

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, plaintiffs demand a trial by jury of all of the claims asserted in this complaint so triable.

Dated:  July 2, 2009

MARC M. SELTZER
SUSMAN GODFREY L.L.P.

ARUN S. SUBRAMANIAN
SUSMAN GODFREY L.L.P.

DREW D. HANSEN
(Admitted *Pro Hac Vice*)
dhansen@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA  98101
Telephone:  (206) 516-3880
Fax:  (206) 516-3883

ANAT LEVY
ANAT LEVY & ASSOCIATES, P.C.

By  Marc M. Seltzer
    Marc M. Seltzer
    Attorneys for Plaintiffs

23

956009v1/010557

**PROOF OF SERVICE**

I, Helen Danielson, declare under penalty of perjury under the laws of the United States of America that the following is true and correct:

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 1901 Avenue of the Stars, Suite 950, Los Angeles, California 90067-6029.

On July 2, 2009, I served copies of the following documents described as follows:

**SECOND AMENDED COMPLAINT FOR VIOLATION OF THE CALIFORNIA USURY LAWS (Cal. Const., Art. XV, §1), AND THE CALIFORNIA UNFAIR COMPETITION LAW (Bus. & Prof. Code § 17200, *et seq.*)**

on the defendant in this action by placing true copies thereof enclosed in sealed envelopes addressed as stated on the attached service list, as follows:

_____ BY MAIL:
I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice, it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

_____ BY PERSONAL SERVICE:
I caused to be delivered such envelope by hand delivery to the offices of the addressee.

_____ BY FEDERAL EXPRESS OR OVERNIGHT COURIER
I caused to be delivered by Federal Express or overnight courier.

XX__ BY ELECTRONIC MAIL:
I caused said documents to be prepared in portable document format (PDF) for e-mailing and served by electronic mail.

Executed on July 2, 2009, at Los Angeles, California.

_XX__ (Federal)
I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Helen Danielson
(Type or Print Name)

(Signature)

956009v1/010557

# SERVICE LIST

## ATTORNEYS FOR PLAINTIFF

Marc M. Seltzer (54534)
SUSMAN GODFREY L.L.P.
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067-6029
Telephone: (310) 789-3100
Fax: (310) 789-3150
mseltzer@susmangodfrey.com

Arun S. Subramanian
(Admitted *Pro Hac Vice*)
SUSMAN GODFREY L.L.P.
654 Madison Avenue, Floor 5
New York, NY 10065
Telephone: (212) 336-8330
Fax: (212) 336-8340
asubramanian@susmangodfrey.com

Drew D. Hansen
(Admitted *Pro Hac Vice*)
SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101
Telephone: (206) 516-3880
Fax: (206) 516-3883
dhansen@susmangodfrey.com

Anat Levy (128040)
ANAT LEVY & ASSOCIATES, P.C.
8840 Wilshire Blvd., Third Floor
Beverly Hills CA 90211
Telephone: (310) 358-3138
Fax: (310) 358-3104
Alevy96@aol.com

## ATTORNEYS FOR DEFENDANTS

John A. Reding
jackreding@paulhastings.com
Thomas A. Counts
tomcounts@paulhastings.com
Edward Han
edwardhan@paulhastings.com
PAUL, HASTINGS, JANOFSKY
 & WALKER LLP
55 Second Street, Twenty-Fourth Fl.
San Francisco, CA 94105-3441
Telephone: (415) 856-7000
Fax: (415) 856-7100

Peter M. Stone
peterstone@paulhastings.com
PAUL, HASTINGS, JANOFSKY
 & WALKER LLP
1117 S. California Avenue
Palo Alto, CA 94304-1106
Telephone: (650) 320-1800
Fax: (650) 320-1900

Attorneys for Defendant
ADVANCEME, INC.

956009v1/010557